IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HILO PRODUCTS, INC., | ) | Civil NO. 22-00069 SOM-WRP |
| | ) | |
| Plaintiff, | ) | ORDER ON TARGET CORPORATION'S |
| | ) | MOTION TO TRANSFER VENUE |
| | ) | PURSUANT TO 28 U.S.C. § |
| | ) | 1404(A) |
| vs. | ) | |
| | ) | |
| TARGET CORPORATION; JOHN DOES | ) | |
| 1-20; JANE DOES 1-20; DOE | ) | |
| PARTNERSHIPS 1-20; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 1-20; AND DOE | ) | |
| GOVERNMENTAL ENTITIES 1-20 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER ON DEFENDANT TARGET CORPORATION'S MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(A)**

**I.        INTRODUCTION.**

Between 2011 and 2018, Plaintiff Hilo Products,

Incorporated, sold millions of dollars of produce to Defendant

Target Corporation.  This action arises out of Hilo Products'

allegations that Target underpaid it on hundreds of occasions.

Target now moves to transfer the action to the District

of Minnesota.  According to Target, the forum selection clause in

a contract signed by Marlene Sanoria on behalf of Hilo Products

designates that district as the exclusive forum and venue for

this action.  Hilo Products responds that it is not bound by the

forum selection clause because Sanoria, the employee in charge of

the company's accounts receivable, lacked the authority to sign

the contract on Hilo Products' behalf.  Target does not challenge Sanoria's lack of express authority.  It maintains, however, that Hilo Products is bound under various rules of agency, such as the doctrines of implied authority, apparent authority, or ratification.

The record is not sufficiently developed to allow the court to resolve those issues.  Under such circumstances, this court has the discretion to hold an evidentiary hearing.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir. 2004). The exercise of that discretion is warranted here.  Holding a limited evidentiary hearing now will allow the remainder of the case to proceed in the appropriate venue, whether that is the District of Minnesota or the District of Hawaii.  Accordingly, the court will set an evidentiary hearing after allowing the parties to conduct limited discovery in accordance with the procedures set forth below.

II.      **BACKGROUND.**

A.  **Hilo Products' Relationship with Target.**

Hilo Products is a wholesaler of produce located on the Big Island.  Between 2011 and 2018, Hilo Products sold produce to two different Big Island stores owned and operated by Target. According to Hilo Products, Target underpaid it on hundreds of

occasions.  *See* ECF No. 15, PageID # 202; *see also* ECF No. 12-5; ECF No. 12-6.[1]

The parties' relationship began on April 23, 2009, when Marlene Sanoria, the head of Hilo Products' Accounts Receivable department, signed Target's "Partners Online Agreement" (the "2009 Agreement").  ECF No. 7-3.  On its face, the 2009 Agreement does not contain a forum selection clause.  In the agreement, Hilo Products acknowledged that it had received the "Target Corporation Rules of Use" and that it "agree[d] to the terms thereof," *id.* at 79, but neither party has submitted a copy of the version of the Rules of Use referred to in the 2009 Agreement.[2]

On October 3, 2011, Sanoria signed a second Partners Online Agreement (the "2011 Agreement.").  ECF No. 7-4.  Sanoria, on behalf of Hilo Products, agreed to be bound by two separate documents, Target's "Rules of Use" and its "Conditions of Contract," including "without limitation, the indemnification, insurance, warranties, governing law, venue, and arbitration

---

[1]  In opposing Target's Motion to Transfer Venue, Hilo Products cites several documents that it attached to its separate motion to remand this action to state court.  *See* ECF No. 12. Although Hilo Products failed to attach those documents to its opposition, the court considers them in deciding this motion.

[2]  Of the hundreds of allegedly unpaid invoices at issue in this action, it appears that no more that ten were incurred before the 2011 Agreement superseded the 2009 Agreement.  *See* ECF No. 12-5, PageID # 139; ECF No. 12-6, PageID # 163.

provisions contained therein." *Id.* at 81.  Those two documents served very different purposes.

The Rules of Use governed Hilo Products' "use of [Target's] website."  ECF No. 7-4, PageID # 84.  Under the Rules of Use that were "in effect at the time Hilo signed the [2011 Agreement]," *see* ECF No. 7-2, PageID # 75, Hilo Products agreed to abide by various rules when it used Target's online software. *See generally* ECF No. 7-4, PageID # 84-87.  The Rules of Use contained a forum selection clause stating that "the exclusive forum and venue for any lawsuit arising out of or related to the [Rules of Use] shall be the United States District Court for the District of Minnesota."  *Id.* at 86.  That clause does not appear to be relevant to this action, because Hilo Products' claims are not connected to its use of Target's website.

The Conditions of Contract[3] set forth the terms that governed the parties' business relationship.  Under the

---

[3]  Hilo Products raises what appears to be a challenge to the authenticity of the copy of the Conditions of Contract submitted by Target.  *See* ECF No. 21, PageID # 247.  According to the declaration of Robin Perket, Target's Exhibit D is a copy of "the Conditions of Contract in effect at the time Hilo signed the [2011 Agreement]," and those Conditions of Contract "remained on the POL website unchanged from October 3, 2011 (the date Hilo signed the [2011 Agreement] through the remainder of Hilo's business relationship with Target."  ECF No. 7-2, PageID # 75-76. Hilo Products points out that the URL on Exhibit D is not the URL of the POL website.  ECF No. 21, PageID # 247.  Even if Perket pulled a copy of an archived version of the Conditions of Contract from a different website, she explicitly states that the document she attaches is the correct one.

4

Conditions of Contract that were "in effect at the time Hilo
signed the [2011 Agreement]," *see* ECF No. 7-2, PageID # 75, Hilo
Products essentially agreed to provide Target with produce
whenever Target issued a purchase order.  ECF No. 7-4, PageID #
89.  The Conditions of Contract also contained several provisions
concerning the adequacy of the goods Hilo Products provided.  *Id.*
at 89-90.  Finally, the Conditions of Contract contained another
forum selection clause that stated that "the exclusive forum and
venue for any lawsuit arising out of or related to the
[Conditions of Contract] shall be the United States District
Court for the District of Minnesota."  *Id.* at 93.

### B.   Sanoria's Authority to Bind Hilo Products.

Target's motion to transfer turns on whether Sanoria
had the authority to sign the 2011 Agreement on behalf of Hilo
Products.  By signing the 2011 Agreement, Sanoria represented
that she had the requisite authority.  *See* ECF No. 7-4, PageID #
81 (stating that Sanoria had "the authority to legally bind and
act on behalf" of Hilo Products, and that she was "authorized to
sign . . . on behalf" of Hilo Products).  The 2011 Agreement also
contained a "verification" that stated that Sanoria was "an
employee" of Hilo Products.  Irene Suzuki, Hilo Products' "Human
Resources Contact," signed the verification.  *Id.*

Under the Hilo Products bylaws, however, Sanoria did
not have the authority she claimed to have.  The bylaws stated

5

that all written contracts entered into by the corporation had to
be signed by "any two of the following officers who are different
persons: president or vice president, and secretary or
treasurer." ECF No. 12-8, PageID # 189. The board of directors
had the ability to modify that requirement at its discretion.
*Id.* Sanoria did not hold any of the specified positions in 2011,
*see* ECF No. 12-9, PageID # 191, and no evidence in the record
suggests that the Hilo Products board permitted her to sign
contracts on behalf of the company.

### C.   Target's Purported Underpayment.

In any event, after Sanoria signed the 2011 Agreement,
Hilo Products sold Target more than $1 million worth of produce.
ECF No. 12-5, PageID # 161, ECF No. 12-6, PageID # 184. Hilo
Products now alleges that Target underpaid it on hundreds of
occasions, resulting in "hundreds of thousands of dollars in
underpaid invoices." ECF No. 15, PageID # 204; *see generally* ECF
No. 12-5; ECF No. 12-6. As a result of the underpaid invoices,
Hilo Products stopped doing business with Target in 2018. ECF
No. 15, PageID # 203.

### D.   This Action.

On December 27, 2021, Hilo Products filed this action
in state court. Because Hilo Products claims that Sanoria did
not have the authority to bind it, the first claim in its initial
complaint was not a breach of contract claim. Instead, it

brought a claim for "Assumpsit-Money Owed" based on the alleged underpaid invoices. ECF No. 2, PageID # 13. Hilo Products did acknowledge Target was "expected to raise the existence of a contract as part of its defense." *Id.* at 14. It therefore brought several claims in the alternative, including claims for rescission and reformation, breach of contract, and breach of the duty of good faith and fair dealing. *Id.* According to the initial complaint, Hilo Products only intended to pursue those claims if the "Court finds the existence of a contract[.]"[4]  *Id.* The initial complaint also included claims based on violations of the Uniform Commercial Code, unjust enrichment, estoppel, waiver, negligent misrepresentation, intentional or fraudulent misrepresentation, negligence, and punitive damages. *Id.* at 14-18.

On February 2, 2022, Target removed the case to federal court based on diversity jurisdiction. ECF No. 1. On March 1, 2022, Target filed the present motion to change venue pursuant to 28 U.S.C. § 1404(a), or, in the alternative, a motion to dismiss. ECF No. 7. In the motion to change venue, Target contends that the forum selection clause in the Conditions of Contract requires the transfer of this action to the District of Minnesota. *See*

---

[4]  Because Hilo Products' breach of contract claims are pled in the alternative, Hilo Products is not simultaneously asserting that it can recover under the 2011 Agreement and that it is not bound by the agreement.

*generally id.*

On March 22, 2022, Hilo Products filed a First Amended Complaint.  ECF No. 15.  The allegations in the First Amended Complaint are similar to those in the initial complaint, but Hilo Products has dropped its claims for negligence and its stand-alone claim for punitive damages.  *See generally* ECF No. 15.  On April 4, 2022, Target withdrew its motion to dismiss the initial complaint, which was no longer operative.  ECF No. 23, PageID # 287.  Thus, only Target's motion to transfer venue is presently before this court.

**III.    ANALYSIS.**

**A.   Legal Standard.**

Target's motion to transfer this action relies on a single assertion: that this case belongs in the  District of Minnesota because of the forum selection clause in the 2011 Agreement.  ECF No. 7-1, PageID #52-55.  Target never suggests that, if Hilo Products is not bound by the forum selection clause, transfer would nevertheless be appropriate.  Hilo Products, for its part, only argues that the forum selection clause is not binding because Sanoria did not have the authority to sign the 2011 Agreement on its behalf.  ECF No. 21, PageID # 235-47.  It does not contend that, even if it is bound by the forum selection clause, this case should nevertheless remain in the District of Hawaii.  Accordingly, to resolve this motion,

8

this court needs to determine only whether Hilo Products is bound by Sanoria's signature on the 2011 Agreement.

Before reaching the merits of that question, this court examines the governing legal standards.  First, Hilo Products' opposition to Target's motion raises disputed issues of fact, and neither party has clearly articulated how those disputes should be resolved.  Second, the parties dispute how the burdens of proof and persuasion should be allocated.

As to the first issue, when a district court is presented with "controverted facts and evidence" because a party "attempt[s] to resist the enforcement of [a] forum selection clause," the district court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  That standard is similar to the "procedure for assessing facts in a disputed summary judgment motion[.]"  *Id.*

This court recognizes that *Murphy* involved an appeal from a district court's decision enforcing a forum selection clause under Federal Rule of Civil Procedure Rule 12(b)(3).  *See id.* at 1137.  After the Ninth Circuit decided *Murphy*, the Supreme Court ruled that challenges to venue based on a forum selection clause should not be raised under Rule 12(b)(3).  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49,

9

59 (2013)("A forum selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of . . . Rule 12(b)(3).").  Instead, "forum-selection clauses that point to a particular federal district" must be enforced through 28 U.S.C. § 1404(a), while "a forum-selection clause pointing to a state or foreign forum" must be enforced through "the doctrine of *forum non covneniens*."[5]  *Id.* at 59-60.

This court nevertheless concludes that the rationale of *Murphy* remains applicable.  *Murphy* concluded that all reasonable inferences must be drawn in the nonmoving party's favor in this type of motion for two reasons.  First, the Ninth Circuit cited the "dramatic effect" that the enforcement of a forum selection clause has on an action.  *Id.* at 1139.  By enforcing a forum selection clause, the court "forecloses suit in the jurisdiction of the plaintiff's choice."[6]  *Id.* (internal quotation marks and brackets omitted).  Second, "these motions are typically made early in the litigation, where the factual record is

---

[5]  The two mechanisms are similar.  "Section 1404(a) is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."  *Id.* at 60.

[6]  Even when forum selection clauses were enforced through Rule 12(b)(3), a district court retained the discretion to "transfer the case to any district in which it properly could have been brought" if it granted a motion to dismiss.  *Madoff v. Bold Earth Teen Adventures*, 2013 WL 1337337, at *3 (D. Haw. Mar. 28, 2013).

undeveloped." *Id.* Both rationales apply equally even though the Supreme Court has now clarified that forum selection clauses should be enforced through motions to transfer under 28 U.S.C. § 1404(a). *See Cybercsi v. Bank of Am. Corp.*, 2015 WL 9434697, at *2 (N.D. Cal. Dec. 24, 2015) (holding that *Murphy* applies to a § 1404(a) motion premised on the existence of a forum selection clause); *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 870 (N.D. Cal. 2015) (same).

   The Ninth Circuit has recognized that viewing the facts in the light most favorable to the nonmoving party may make it difficult to enforce forum selection clauses at the beginning of a case. *See Murphy*, 362 F.3d at 1139 (noting that "in many cases the non-moving party will survive" early attempts to enforce a forum selection clause). "To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold [the] motion in abeyance until the district court holds an evidentiary hearing on the disputed facts." *Id.* "Upon holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive . . . . These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to deference." *Id.* at 1140. "Alternatively, the district court may deny the . . . motion while granting leave to refile it if

11

further development of the record eliminates any genuine factual issue." *Id.* at 1139.  Accordingly, in ruling on Target's motion, this court may either (1) view any disputed facts in the light most favorable to Hilo Products, (2) hold an evidentiary hearing and resolve disputed facts itself, or (3) grant Target leave to refile the motion after further factual development.[7]

As to the second issue, Target, citing *Murphy*, contends that Hilo Products bears a "heavy burden" of showing that it is not bound by the forum selection clause.  ECF No. 23, PageID # 287.  In *Murphy*, the Ninth Circuit held that "[t]he enforceability of [a] forum selection clause in [a] contract is controlled by *Bremen v. Zapata Off-Shore*, 407 U.S. 1 (1972), wherein the Supreme Court held that forum selection clauses are presumptively valid."  362 F.3d at 1140.  "The party challenging the clause bears a heavy burden of proof and must clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (internal quotation marks omitted).  Under that standard, this court would first view the facts in the light most favorable to Hilo Products, and then ask whether, under those facts, Hilo

---

[7]  According to Target, to "the extent this Court determines that there is an issue of fact regarding authority . . . additional discovery should be conducted *after* this matter is transferred to the District of Minnesota."  ECF No. 23, PageID # 296.  *Murphy* does not permit this court to adopt that proposal. This court must either view disputed facts in the light most favorable to Hilo Products or resolve the disputed facts itself.

Products could meet the heavy burden of showing that the forum selection clause should not be enforced.

But that standard applies to challenges to a *forum selection clause.* Hilo Products is claiming that it was not bound by the 2011 Agreement in the first place.[8]  It is not apparent that the "heavy burden" discussed in *Murphy* applies to that argument.

*Bremen* is instructive.  In that case, the Supreme Court held that if parties include a forum selection clause in a "freely negotiated" contract, then, "absent some compelling and countervailing reason, [the forum selection clause] should be honored by the parties and enforced by the courts."  407 U.S. at 12.  A party can establish the existence of a compelling and countervailing reason in one of three ways: (1) by "clearly

---

[8]  This court recognizes that a party cannot avoid the effect of a forum selection clause by arguing that the contract, in its entirely, was induced by fraud.  Instead, the party must show that *the forum selection clause itself* was the product of fraud.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, (1974); *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) ("The Supreme Court has noted that simply alleging that one was duped into signing the contract is not enough.").  The justification for that rule appears to be that forum selection clauses should be "treat[ed] . . . as severable" from the remainder of a contract.  *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 773 (5th Cir. 2016) (explaining why "[a]rguments that go to the validity of the contract as a whole do not prevent enforcement of a [forum selection clause]").  Under the circumstances presented here, however, it is impossible to rely on the doctrine of severability.  Even if the forum selection clause is severed from the rest of the 2011 Agreement, this court still must decide whether Sanoria had the authority to bind Hilo Products.

showing" that "enforcement would be unreasonable or unjust, or
that *the clause* would be invalid for such reasons as fraud or
overreaching"; (2) by overcoming a "heavy burden" of showing that
the chosen forum would be "so manifestly and gravely
inconvenient" that the party challenging the clause would be
"effectively deprived of a meaningful day in court"; or (3) by
"firmly convinc[ing]" the court that enforcement of the forum
selection clause would contravene an important public policy of
the plaintiff's chosen forum. *Id.* at 12-19 (emphasis added).  In
other words, in *Bremen*, the Supreme Court reasoned that if the
parties have agreed to a contract that includes a forum selection
clause, then that clause should be enforced in most
circumstances.  Parties seeking to avoid the effect of a forum
selection clause included in a contract they signed bear a heavy
burden.  To meet that burden, they rely on one of the three
compelling reasons identified by the Supreme Court.

        But, as Target acknowledges, Hilo Products is not
claiming that one of those three reasons exists in this case.[9]

_____

        [9]  Target cites a case in which a judge in the Eastern
District of Virginia evaluated an argument that the signatory to
a contract lacked the authority to bind his corporation under
*Bremen*'s "fraud or overreaching" prong.  *The Hipage Co. v.
Access2Go, Inc.*, 589 F. Supp. 2d 602, 612 (E.D. Va. 2008).  But
the "fraud or overreaching" prong evaluates whether the
"*inclusion* of the forum selection clause *in the agreement* was the
product of fraud or overreaching."  *Murphy*, 362 F.3d at 1140
(emphases added) (internal quotation marks omitted).  Here, Hilo
Products contends that it was not bound by the agreement at all.

ECF No. 23, PageID # 289 ("Rather than argue the existence of one
of the three grounds that would permit this Court to decline to
enforce the forum-selection clause, Hilo attempts to . . .
argu[e] that Sanoria lacked authority to bind Hilo.").  Instead,
Hilo Products is raising the preliminary issue of whether it is
bound by a freely negotiated contract *at all*.  As the Supreme
Court held in *Bremen*, a party seeking to avoid the enforcement of
a clause in a contract that it signed should bear a heavy burden.
It does not necessarily follow that the same burden should apply
when the *existence* of the contract is challenged.  *See Atl.
Marine*, 571 U.S. at 62 & n.5 (explaining that the doctrine that
only "extraordinary circumstances" permit a party to avoid the
effect of a forum selection clause "presupposes a contractually
valid" clause); *see also DePuy Synthes Sales, Inc. v. Howmedica
Osteonics Corp.*, 28 F.4th 956, 962 (9th Cir. 2022) (suggesting
that the question of whether a forum selection clause is
contractually valid is a "threshold issue" that must be decided
before the *Bremen* analysis applies).

          In any event, this court does not need to determine
whether Hilo Products bears a "heavy burden" at this time.  It is
beyond dispute that, if Hilo Products is not bound by the 2011
Agreement at all, the forum selection clause in that agreement

should not be enforced against it.[10]  *TRM Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2017 WL 11636241, at *3 (C.D. Cal. Feb. 27, 2017). There also appears to be no dispute that, under the language of the Hilo Products bylaws, Sanoria did not actually have the authority to bind Hilo Products because she was not the company's president, vice president, treasurer, or secretary. Thus, even if Hilo Products did have a heavy burden of showing that the forum selection clause should not be enforced against it, it has met that burden by showing Sanoria did not have the authority to bind it.[11]

Of course, under the law of agency, there are exceptions to the rule that a principal is not bound by the unauthorized act of its agent.  Target seems to be saying that Hilo Products should bear a heavy burden of proving that none of

---

[10]  To the extent that a judge in the Eastern District of Virginia has suggested that a forum selection clause can be enforced against a party even if it is not bound by the contract it is a party to, *see The Hipage*, 589 F. Supp. 2d at 612, that analysis is not persuasive.

[11]  Hilo Products also appears to argue that the court need not reach the agency issue, because the forum selection clause in the Conditions of Contract was not incorporated by reference into the 2011 Agreement.  *See* ECF No. 21, PageID # 246.  That argument is unpersuasive.  The 2011 Agreement stated that Sanoria had "reviewed the . . . Conditions of Contract" and that she agreed to be bound by them.  ECF No. 7-4, PageID # 81.  Moreover, the Agreement emphasized that the Conditions of Contract included a forum selection clause.  *Id.*  Those statements incorporated the Conditions of Contract into the 2011 Agreement.  *See Safeway, Inc. v. Nordic PCL Const., Inc.*, 130 Hawaii 517, 527, 312 P.3d 1224, 1234 (Ct. App. 2013) (internal quotations and punctuation omitted).

those exceptions apply here.  *See* ECF No. 23. PageID # 296.  This
court disagrees.  At trial, Target would bear the burden of
proving that an exception applied.  *See Cho Mark Oriental Food,*
*Ltd. v. K & K Int'l*, 73 Haw. 509, 519, 836 P.2d 1057, 1063
(1992); *see also Henna v. Hayashida*, 129 Hawaii 448, 302 P.3d 716
(Ct. App. 2013) ("The burden of proving the existence and terms
of a valid contract is on the party asserting it." (internal
quotation marks and brackets omitted)).[12]  It would make little
sense to require Hilo Products to affirmatively disprove every
single doctrine that could possibly be raised to bind it to the
2011 Agreement.  Instead, Target should be required to meet an
initial burden of establishing that one of those doctrines
applied.  *TRM Mfg.*, 2017 WL 11636241, at *3 (placing the burden
of establishing an agency relationship on Home Depot under
similar circumstances).  Based on the present record, Target has
failed to meet its burden.

   **B.   No Evidence Suggests that Hilo Products was Bound
         by the 2011 Agreement.**

         Target claims that Hilo Products is bound by Sanoria's
signature on the 2011 Agreement under three different theories:
(1) implied authority; (2) apparent authority; and (3)

_____

         [12]  Target acknowledges that although the 2011 Agreement
calls for the application of Minnesota law, for the purposes of
this motion there is no difference between Hawaii law and
Minnesota law.  ECF No. 23, PageID # 289.

ratification.  ECF No. 23, PageID # 289-94.  The present record does not support the application of any of those doctrines.

### 1.   **Implied Authority.**

Target first argues that Hilo Products is bound by the 2011 Agreement because Sanoria had implied authority.  "Actual authority exists only if there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent to so act[.]"  *Nelson v. Boone*, 78 Hawaii 76, 82, 890 P.2d 313, 319 (1995).  An agent's authority is implied when the manifestation of consent is "implied from the conduct of the parties or surrounding circumstances."  *Id.* "[T]he relevant inquiry is whether the agent reasonably believes, because of the conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him to so act."  *Id.*

Target maintains that Sanoria's belief that she had the authority to bind Hilo Products was "reasonable given [her] position as [head of] Accounts Receivable."  ECF No. 23, PageID # 290.  But the only obvious responsibility that comes with being the head of the accounts receivable department is the responsibility for collecting unpaid debts.  Sanoria's title, standing alone, does not show that she could have reasonably believed that she had the authority the sign contracts on Hilo Products' behalf.  In the absence of any additional evidence,

this court cannot conclude that Sanoria had the implied authority to bind Hilo Products.

### 2.   **Apparent Authority**.

Target also contends that Sanoria had apparent authority.  ECF No. 23, PageID # 291.  "Apparent authority arises when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he was purported to have."  *Cho Mark*, 73 Haw. at 516, 836 P.2d at 1062 (internal quotation marks omitted).  "The critical focus is not on the principal and agent's intention to enter into an agency relationship, but on whether a third party relies on the principal's conduct based on a reasonable belief in the existence of such a relationship."  *Id.* at 516-17, 836 P.2d at 1062.

That articulation of the rule "is meant for a case where the principal is a human being rather than a corporation." *Chase v. Consol. Foods Corp.*, 744 F.2d 566, 568 (7th Cir. 1984) (Posner, J.).  In the corporate context, it is more difficult to identify "the principal" who can confer apparent authority on an agent.  *See id.*  Of course, a corporation can only act through its agents.  *Id.*  Thus, in the corporate context, apparent authority arises when one corporate agent does something that creates the appearance that another corporate agent had the authority at issue.  *See id.*

19

But *which* corporate agents can create the requisite appearance of authority?  As an initial matter, "the appearance of authority must be created by agents other than the agent whose authority is in question."  *Id.*  An agent "cannot just bootstrap himself into a position where he can bind his principal."  *Id.*; *see also Upper Valley Aviation v. Mercantile Nat. Bank*, 656 S.W.2d 952, 957 (Tex. App. 1983) ("[T]he authorized acts or words of an agent, other than the agent claiming the benefit of apparent authority, must be considered.").

Moreover, the agent who creates the appearance of authority must be "responsible."  *Chase*, 744 F.2d at 569.  In other words, a Hilo Products janitor could not have created the impression that Sanoria had the power to bind Hilo Products.  To show that it *reasonably* concluded that Sanoria had the authority to bind Hilo Products, Target would have to show that the person it relied on could be expected to know whether or not Sanoria would have had that authority.

Target has not identified any such agent.  Target discusses Sanoria's own representations about her authority extensively.  *See* ECF No. 23, PageID # 292-93.  But Sanoria herself could not bootstrap herself into a position of being able to bind Hilo Products.  *Chase*, 744 F.2d at 568.  Target also notes that a second Hilo Products employee, Irene Suzuki, signed a "verification" in the 2011 Agreement stating that Sanoria was

20

an employee of Hilo Products.  *See* ECF No. 7-4, PageID # 82.
Sanoria's status as a Hilo Products employee is insufficient to
support a reasonable conclusion that she had the authority to
bind Hilo Products.  Moreover, nothing allowed Target to conclude
that Suzuki, who was only identified as a "human resources
contact" without any mention of the position she held in the
human resources department, knew the intricacies of the
corporation's bylaws.  Target has not demonstrated that it could
have reasonably concluded that Sanoria had the authority it
attributes to her.

### 3.   Ratification.

Finally, Target argues that Hilo Products ratified the
2011 Agreement by selling produce to Target for seven years.  ECF
No. 23, PageID # 293.  "The unauthorized act of an agent, if
ratified, is as binding upon the principal as an original express
grant of authority."  *Hawaii Hous. Auth. v. Uyehara*, 77 Hawaii
144, 150, 883 P.2d 65, 71 (1994) (internal quotation marks and
brackets omitted).  Ratification can occur through "conduct that
justified a reasonable assumption that the [principal]" assents
to the initial act.  Restatement (Third) Of Agency § 4.01 (2006).
For instance, "knowing acceptance of the benefit of a transaction
ratifies the act of entering into the transaction." *Id.*, cmt. d.

Usually, a principal must know the "material facts
involved in the original act" to ratify it.  Restatement (Third)

21

Of Agency § 4.06 (2006).  A principal, however, may "choose to ratify [an act] without knowing material facts."  *Id.*, cmt. d. "A factfinder may conclude that a principal has made such a choice when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation."  *Id.*

Again, those rules assume that a human being, rather than a corporation, is the principal.  Just as in the context of apparent authority, when the rule is applied in the corporate context, it is not immediately clear which corporate officers have the ability to ratify an action.  It would make little sense to allow an agent who did not have the authority to take an action the first instance to ratify the same act.  In this case, Hilo Products' bylaws stated that all contracts had to be signed by two enumerated officers (Hilo Products' president, vice president, secretary, or treasurer).  Accordingly, to establish that Hilo Products ratified the 2011 Agreement, Target must show that two of the designated officers assented to the agreement by, for instance, accepting the benefits of that Agreement.

The record does not permit the court to reach that conclusion.  Nothing in the record discusses what the officers of Hilo Products knew regarding the company's dealings with Target, or when they knew it.  In the absence of such evidence, this court cannot find that Hilo Products ratified the 2011 Agreement.

### C.   **An Evidentiary Hearing is Appropriate**.

In sum, based on the record before it, after drawing all reasonable inferences in favor of Hilo Products, this court cannot conclude that Hilo Products is bound by the 2011 Agreement.  But that does not mean that Target cannot make such a showing.  It is certainly possible that Hilo Products' executives implied that Sanoria had the authority to bind the company.  It is also plausible that Hilo Products' executives ratified the 2011 Agreement by learning about the company's sales to Target and accepting the proceeds of those sales.

Those issues should be resolved through an evidentiary hearing.  *See Murphy*, 362 F.3d at 1139 ("Whether to hold a hearing on disputed facts and the scope and method of that hearing is within the sound discretion of the district court.").  To the extent that Hilo Products is bound by the forum selection clause, Target understandably seeks to transfer this action to the District of Minnesota at the earliest possible opportunity.  A limited evidentiary hearing will conserve judicial economy by resolving the venue question as soon as possible.

Hilo Products contends that the parties do not need to take discovery before the hearing.  Instead, Hilo Products proposes that the parties "exchange exhibits and submit all direct testimony by written affidavit or declarations well in advance of an evidentiary hearing."  ECF No. 33, PageID # 505.

23

That approach would be unfair to Target.  Nearly all of the
evidence relevant to the issues of implied authority, apparent
authority, and ratification is in the hands of Hilo Products.
Without discovery, Target likely will have little to submit.
Some limited discovery is necessary before the hearing itself.
*See, e.g.*, *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir.
2014) (suggesting that a court "may order limited discovery"
before resolving transfer motions or *forum non conveniens* motions
based on a forum selection clause).

     Target, on the other hand, proposes that it be allowed
to "serve written discovery and document requests, and to take
depositions limited to the issue of authority."  ECF No. 32,
PageID # 492.  It maintains that "[t]he categories of discovery
relevant to the resolution of any factual dispute regarding
whether Hilo is bound by the [2011 Agreement] include: 1) Hilo's
relationship with Target and the [2011 Agreement]; 2) Hilo's
general practices and procedures regarding contracts and customer
relationships; 3) the scope of Sanoria's and Suzuki's employment
and authority; and 4) Hilo's Board of Directors."  *Id.* at 491-92.
Those proposals appear to generally be reasonable.

     However, this court is concerned that Target also
effectively seeks to have this court ratify specific document
requests that it seeks to propound.  For instance, it asks this
court to order Hilo Products to produce "[a]ll documents and

24

communications, including internal emails, regarding Target,
Partners Online, or the Contract" within 21 days.  ECF No. 32,
PageID # 493.  It is not this court's usual practice to order
parties to respond to document requests without affording them
the opportunity to object.  Moreover, this court is concerned
that that specific request, for instance, may be both overbroad
and unduly burdensome.  While emails to Hilo Products' *officers
and directors* discussing Target may be relevant to the issue of
ratification, that is not necessarily true of every single
internal Hilo Products email discussing Target.  Moreover,
requiring Hilo Products to review every internal email with the
word "target" in it may impose a disproportionate burden,
depending on the volume of documents at issue.  This court cannot
decide those issues at this time.

   Instead, in light of the limited nature of the
discovery at issue and the fact that it appears that the parties
have already had some discussions about how to proceed, this
court establishes the following schedule for limited discovery:

   &bull; Within seven days of the issuance of this order,
the parties may propound written discovery
requests concerning the topics that will be
relevant to the evidentiary hearing;

   &bull; Objections to the written requests are due within
14 days of the issuance of this order;

   &bull; Within 21 days of the issuance of this order, the
parties shall meet and confer to attempt to
resolve any objections to the written discovery
requests;

- If the parties cannot resolve their disputes, they shall submit simultaneous briefing justifying their position within 28 days of the issuance of this order;

- Document production shall be completed with 45 days of the issuance of this order;

- Target may, within 60 days of the issuance of this order, depose individuals whose testimony is relevant to the issues of implied authority, apparent authority, or ratification. This does not confer on Target the ability to take unlimited depositions. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, any discovery must be proportional to the needs of the case.

- All other discovery is stayed until the court issues an order deciding the present motion.

If the parties object to these procedures or believe that they will be unduly burdensome, they should notify the court by May 11, 2022.

**IV.      CONCLUSION.**

This court will hold an evidentiary hearing on Target's motion to transfer after the completion of the discovery procedures set forth in this order. In the meantime, this court cancels the hearing set for May 10, 2022.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 6, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Hilo Products v. Target Corporation*, Civil No. 22-00069 SOM-WRP, ORDER ON TARGET CORPORATION'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)